In the Matter of NEW YORK STATE LABOR RELATIONS BOARD, Appellant, against HOLLAND LAUNDRY, INC., et al., Respondents.

Argued May 16, 1945; decided July 19, 1945.

*William E. Grady, Jr.,* and *Philip Feldblum* for appellant. I. The defense of res judicata is insufficient, for there was not identity of parties in the injunction action and in the Board's unfair labor practice proceeding. Neither the Board nor the union was party to the injunction action. II. The union was not bound by the judgment in the injunction action. (*Matter of Stork Restaurant, Inc.,* v. *Boland,* 282 N. Y. 256; *Marshall Field & Co.* v. *Board,* 318 U. S. 253; *Matter of N. Y. State Labor Relations Board* v. *Timen,* 264 App. Div. 120; *Labor Board* v. *Bradford Dyeing Assn.,* 310 U. S. 318; *National Labor Relations Bd.* v. *National Motor B. Co.,* 105 F. 2d 652; *National Labor R. Board* v. *Grower-Shipper V. Assn.,* 122 F. 2d 368; *National Labor Relations Board* v. *Sunshine Mining Co.,* 110 F. 2d 780; *Fish* v. *Vanderlip,* 218 N. Y. 29; *Davies* v. *Stumpf,* 262 App. Div. 499, 288 N. Y. 704; *Hendrick* v. *Biggar,* 209 N. Y. 440; *Haverhill* v. *International R. Co.,* 217 App. Div. 521, 244 N. Y. 582; *Wolf* v. *Kenyon,* 242 App. Div. 116; *Bigelow* v. *Old Dominion Copper Co.,* 225 U. S. 111; *First National Bank of Fleischmanns* v. *Creamery Package Mfg. Co.,* 21 N. Y. S. 2d 976; *Matter of Smith,* 175 Misc. 545, 175 Misc. 688.) III. The Board, not the union, was the complainant and sole protagonist in the Board's unfair labor practice proceeding. (*Matter of Stork Restaurant, Inc.,* v. *Boland,* 282 N. Y. 256;

*Amalgamated Workers* v. *Edison Co.,* 309 U. S. 261.) IV. The defense of res judicata is insufficient, for the subject matter of the injunction action and the subject matter of the unfair labor practice proceeding are not the same. V. The injunction action was private litigation between private parties and involved private property rights only. No public right was involved and in no sense was the public a party thereto. (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Truax* v. *Corrigan,* 257 U. S. 312; *Duplex Co.* v. *Deering,* 254 U. S. 443; *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418; *Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U. S. 229; *Nat. Licorice Co.* v. *Labor Board,* 309 U. S. 350.) VI. The Board's unfair labor practice proceeding was an assertion of the public right, and that alone. (*Matter of Stork Restaurant, Inc.,* v. *Boland,* 282 N. Y. 256; *Met. Life Ins. Co.* v. *Labor Relations Board,* 280 N. Y. 194; *Nevins, Inc.,* v. *Boland,* 167 Misc. 428; *Amalgamated Workers* v. *Edison Co.,* 309 U. S. 261; *Myers* v. *Bethlehem Corp.,* 303 U. S. 41; *Newport News Co.* v. *Schauffler,* 303 U. S. 54; *National Labor Relations Bd.* v. *General Motors Corp.,* 116 F. 2d 306; *National Labor Relations Bd.* v. *West Kentucky C. Co.,* 116 F. 2d 816; *Agwilines, Inc.,* v. *National Labor Relations Board,* 87 F. 2d 146; *Matter of Benedict* [*Limited Editions Club, Inc.*], 265 App. Div. 518.)

*Charles Wilson* and *Louis Malin* for respondents. I. The former adjudication conclusively determined the issues before the Labor Board. The issues were the same. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304; *Allen* v. *United States Fire Ins. Co.,* 245 App. Div. 31, 270 N. Y. 597; *Furman* v. *Furman,* 178 Misc. 582, 287 N. Y. 772; *Reich* v. *Cochran,* 151 N. Y. 122; *Foster* v. *White & Sons,* 244 App. Div. 368, 270 N. Y. 572; *Holmes* v. *Ivanhoe Cleaners & Dyers, Inc.,* 252 App. Div. 765; *Bell* v. *Merrifield,* 109 N. Y. 202; *Sielcken-Schwarz* v. *American Factors, Ltd.,* 265 N. Y. 239; *Willie* v. *Maier,* 256 N. Y. 465; *Marine, T. Corp.* v. *Switzerland, G. Ins. Co.,* 263 N. Y. 139; *Wilson's Executor* v. *Deen,* 121 U. S. 525.) II. The Labor Board may not disregard the former adjudication. (*Jewish Hospital of Brooklyn* v. *"John Doe",* 252 App. Div. 581; *Devon Knitwear Co., Inc.,* v. *Levinson,* 173 Misc. 779; *United Baking Co.* v. *Bakery & Conf. Workers' Union,* 257

App. Div. 501; *Busch Jewelry Co., Inc.,* v. *United Retail, etc., Union,* 170 Misc. 482; *Domanick* v. *Triboro Coach Corp.,* 259 App. Div. 657; *Matter of Slattery* v. *Bd. of Est. & Appor.,* 246 App. Div. 296, 271 N. Y. 346; *Dorrell* v. *State,* 83 Ind. 357; *United States* v. *Balt. & Ohio R. R. Co.,* 229 U. S. 244; *Matter of Collins* v. *Collins,* 245 App. Div. 612.) III. The former adjudication is conclusive herein regardless of the identity of parties. (*Labor Board* v. *Mackay Co.,* 304 U. S. 333; *Ballston-Stillwater K. Co.* v. *National Labor R. Board,* 98 F. 2d 758; *Hazel-Atlas Glass Co.* v. *National Labor Relations Bd.,* 127 F. 2d 109; *Wilson & Co.* v. *National Labor Relations Board,* 120 F. 2d 913; *National Labor Relations Bd.* v. *Carlisle Lumber Co.,* 99 F. 2d 533; *National Labor Relations Board* v. *Ohio Calcium Co.,* 133 F. 2d 721; *Labor Board* v. *Fansteel Corp.,* 306 U. S. 240; *Standard Lime & Stone Co.* v. *National Labor R. Board,* 97 F. 2d 531; *Matter of N. Y. State Labor Rel. Bd.* v. *Union Club,* 268 App. Div. 516; *Gilman* v. *Tucker,* 128 N. Y. 190; *Railroad Equipment Co.* v. *Blair,* 145 N. Y. 607; *Donnell* v. *State,* 83 Ind. 357.) IV. The union is bound by the former adjudication. (*Castle* against *Noyes,* 14 N. Y. 329; *Carleton* v. *Lombard, Ayers & Co.,* 149 N. Y. 137; *Souffront* v. *Compagnie Des Sucreries,* 217 U. S. 475; *Boston & Maine R. R.* v. *Delaware & Hudson Co.,* 238 App. Div. 191; *D. & H. Co.* v. *M. & F. E. R. R. Co.,* 268 N. Y. 394; *Rudd* v. *Cornell,* 171 N. Y. 114; *Flynn* v. *Colonial Discount Co.,* 149 Misc. 607.) V. The prior adjudication is binding upon the former employees and is a bar to an award of reinstatement and back pay. (*Meagley* v. *City of Binghamton,* 36 Hun 171; *National Labor Rel. Board* v. *Walt Disney Productions,* 146 F. 2d 44; *National Labor Relations Board* v. *Mall Tool Co.,* 119 F. 2d 700; *National Labor Relations Board* v. *William Davies Co.,* 135 F. 2d 179; *United Baking Co.* v. *Bakery & Conf. Workers' Union,* 257 App. Div. 501; *Domanick* v. *Triboro Coach Co.,* 259 App. Div. 657; *Labor Board* v. *Fansteel Corp.,* 306 U. S. 240; *Edison Co.* v. *Labor Board,* 305 U. S. 197.)

LEHMAN, Ch. J. In August, 1937, Holland Laundry, Inc., hereinafter referred to as the Employer, entered into an agreement which recites that it is made with a " duly elected collective bargaining committee consisting of the employees of the Holland Laundry engaged as route salesmen, drivers, and

drivers' helpers, and each and every one of the employees of said company engaged as route salesmen, drivers and drivers' helpers, hereinafter called the ' Employees '." The agreement was signed by the " bargaining committee " and also individually by the group of employees designated in the contract. The contract fixed the wages, hours and conditions of work of those employees and provided among other things that " during the entire period of this agreement to September 1, 1942, they, or any of them, will not go out on strike "; that any employee shall have " the right to join any union of his own choosing or to refrain from joining any union "; but that they " or any of them shall not and have not the right to demand a closed shop or a signed agreement by his Employer with any union "; and that " it is strictly understood and agreed * * * that the question as to the propriety of an Employee's discharge is in no event to be one for arbitration or mediation and that any action of reinstatement, if any, will be taken voluntarily by the Employer if it deems such reinstatement advisable."

A majority of the employees who signed this agreement thereafter became members of Laundry Workers Joint Board of Greater New York A C W, hereinafter referred to as the " Union," and in October, 1939, went out on strike in disregard of the agreement they had signed. The Employer then commenced an action in the Supreme Court, Kings County, against the striking employees. The complaint in that action alleged that " on or about October 10, 1939, defendants, in violation of the aforesaid agreement, called a strike against plaintiff and since said day have been on strike against plaintiff "; that in connection with the strike " defendants have picketed and do picket the homes of great numbers of plaintiff's customers "; that defendants have sought by the use of force and violence to intimidate employees and customers and committed other unlawful acts; and that the " plaintiff has complied with all the obligations imposed by law which are in anywise involved in this controversy, and has offered and has made every reasonable effort to settle the within dispute by offering to negotiate with defendants or with any committee or agency selected by them * * * any grievance defendants have or claim to have ". The prayer of the complaint was that the defendants be enjoined (1) " from using violence, coercion, intimidation

by force of numbers or otherwise, fraudulent representation or other unlawful means upon plaintiff's customers and employees; (2) from picketing the homes of plaintiff's customers; (3) from continuing to strike in violation of their agreement ''.

Upon an application by the Employer for an injunction *pendente lite* the justice at Special Term heard the witnesses offered by each side. Each allegation of the complaint was litigated as upon the trial of an action. After the hearings were concluded the justice at Special Term filed a decision containing forty-three findings of fact and eight conclusions of law in favor of the plaintiff employer, including the conclusion that '' VII. Plaintiff is entitled upon the filing of a bond in the sum of $3,000.00 to an injunction during the pendency of this action restraining defendants and all persons associated with them (1) from continuing directly or indirectly to perform any acts in furtherance of a strike, other than refusing to remain in employ of plaintiff; (2) from any acts of picketing of plaintiff's trucks or plaintiff's customers or plaintiff's place of business; (3) from making any fraudulent representations in respect of plaintiff or its business; (4) from interfering with or intimidating by threats of violence or otherwise any of plaintiff's employees or from picketing or following any of plaintiff's trucks or employees.''

The parties to the action then stipulated that '' the same proof that was adduced by the parties upon the hearing  *  *  * would be adduced upon a trial for a permanent injunction,'' and that without further findings or conclusions the plaintiff have a permanent injunction in accordance with the above '' conclusion,'' but that the defendant shall not be barred by anything in the stipulation from filing an appeal from the judgment granting a permanent injunction. Final judgment was accordingly entered on December 8, 1939. An appeal from that judgment was discontinued without costs by stipulation of the parties. The final judgment constitutes a conclusive adjudication binding upon the parties in the action in all subsequent litigation *between the same parties* regardless of whether or not the findings are sustained by the evidence or the conclusions accord with sound principles of law.

The findings of the Trial Justice conform closely to the allegations of the complaint. Referring to the agreement

signed in August, 1937, the Trial Justice found that " the employees of plaintiff in the making of the said contract were represented by a bargaining committee · * * * chosen freely * * * without any participation in any manner by plaintiff in their choice or without plaintiff in any manner influencing or seeking to influence its employees in their choice of such committee. * * * After the said contract had been agreed upon and executed by plaintiff and the said committee of plaintiff's employees, the said contract was signed by all the drivers, route salesmen and drivers' helpers," including all the striking employees who were named as defendants in the injunction action, and that " the said employees of plaintiff signed said contract voluntarily and without any persuasion or influence by the plaintiff." The Trial Justice also found that " defendants in connection with said strike have committed and threatened to commit unlawful acts and in the carrying on of said strike have violated the aforesaid contract made between them and plaintiff which said contract is not contrary to public policy "; that the plaintiff " at no time has refused to bargain collectively with the representatives of its employees " or " to discuss grievances " with them; that the defendants have never notified the plaintiff that " they desire any change in the bargaining agency which should represent them or that their bargaining agency had been superseded or that they desired their committee to be superseded by the ' Laundry Workers Joint Board ' or by any other bargaining agency "; and that plaintiff prior to and during the strike offered to negotiate any grievances with the original bargaining committee referred to in the contract " or any other bargaining agency defendants chose to represent them."

After the judgment was entered in favor of the Employer, in effect adjudging that the Employer was guilty of no unfair labor practices and that the employees had violated their valid agreement not to strike, conferences took place between the Union and the Employer at which the Union requested the Employer to reinstate the striking employees. The Employer refused such a request on January 7, 1940. In spite of the fact that in litigation between the Employer and its employees the Supreme Court of the State had found that the Employer had not been guilty of any unfair labor practices, the Union in February, 1940, presented to the New York State Labor Rela-

tions Board a verified charge that the Employer had " engaged in and was engaging in unfair labor practices." After preliminary investigation of the Union's verified charge the Labor Relations Board, pursuant to the provisions of the New York State Labor Relations Act (Labor Law, art. 20), issued and caused to be served a complaint charging that the Employer, by numerous acts specified in the complaint, " in or about the months of July, August and September, 1937, initiated, dominated and interfered with, and contributed support to the formation " of " an employee organization, association, agency or plan, purporting to exist, in whole or in part, for the purpose of dealing with the * * * [Employer] on behalf of employees within the appropriate unit * * * concerning terms or conditions of employment, labor disputes or grievances." The " employee organization, association, agency or plan " referred to in the complaint of the State Labor Relations Board is the " Collective Bargaining Committee of the Employees of Holland Laundry, Inc." which had negotiated and signed the contract dated August 19, 1937, and is described in the contract as the " collective bargaining committee " which " the Employees engaged by and working for the Employer as route salesmen, drivers and drivers' helpers have duly and regularly selected and designated ". The complaint further charges that this " bargaining committee," thereafter referred to in the complaint of the State Labor Relations Board as " the Association," is a " company union within the meaning of Section 701, subdivision 6," of article 20 of the Labor Law, and that the Employer, by acts specified in the complaint, " commencing in or about July, 1937, and continuing to the date of this complaint, sought to and did interfere with, restrain and coerce the employees within the appropriate unit * * * in the exercise of their right to join or assist the Union " (i.e., Laundry Workers Joint Board of New York, affiliated with Amalgamated Clothing Workers of America, C.I.O.), " and to engage in concerted activities for the purposes of collective bargaining or other mutual aid or protection ". According to the allegations of the complaint of the Board, " prior to October 9, 1939, a majority of the employees within the appropriate unit * * * had designated the Union as their representative for the purposes of collective bargaining * * * in respect to

rates of pay, wages, hours of employment and other conditions of employment," but the Employer failed and refused to negotiate in good faith with the Union and "on or about October 11, 1939, in protest against and as a consequence of the acts" of the Employer "a majority of the employees then within the appropriate unit * * * went on strike."

The complaint of the State Labor Relations Board names these employees. All were defendants in the action for an injunction brought by the Employer, in which judgment in favor of the Employer had been granted on December 9, 1939. As we have said, the Employer thereafter refused to reinstate these employees and the complaint charges that such refusal was wrongful. No further detailed comparison of the findings and conclusions of the Supreme Court in the injunction action with the specifications of alleged wrongful acts of the Employer contained in the complaint of the Labor Relations Board seems needed to show that the court had exonerated the Employer of any wrong in connection with substantially every charge specified in the complaint of the Labor Relations Board and, if the findings of the court in the injunction action are binding upon both the Employer and the employees, the refusal of the Employer to reinstate the striking employees was justified. At the hearing of the charges before the Labor Relations Board, counsel for the Employer objected to the proceedings on the ground "that the issues created by the complaint in this proceeding have been adjudicated before and passed upon by the Supreme Court" and stated that, after the introduction of the documentary evidence establishing such prior adjudication, the Employer would not participate further in the hearing. Accordingly, the evidence thereafter introduced by the Board is uncontroverted. It is apparent from the nature of such evidence that much of it could not be controverted.

On December 23, 1942, after the hearings were completed upon its complaint, the State Labor Relations Board rendered its decision, finding among other things that The Collective Bargaining Committee of the Employees of Holland Laundry, Inc., was initiated by the Employer in July or August, 1937, and the Employer "dominated and interfered with and contributed support to the formation of the Committee"; that this organization is a "company union" and that the Employer and its

agents and officers have "urged, persuaded and warned the employees to form, join and continue membership in the Committee" and "have participated in, assisted in, supervised and controlled meetings, management, operation and policies of the Committee." That the Employer "required" its employees to enter into the "purported collective bargaining agreement" of August 19, 1937, "for the purposes of forestalling attempts by its employees to join, for the purposes of collective bargaining, a labor organization of their own choosing." That "on or about August 12, 1938, and prior to October 9, 1939, a majority of the employees within the appropriate unit had designated Laundry Workers Joint Board as their representative for the purposes of collective bargaining with Holland Laundry, Inc.,'' and that "by October 9, 1939, the Union was, and at all times since then has been, the exclusive representative of all the employees within the appropriate unit for the purposes of collective bargaining with Holland Laundry, Inc.," but that the Employer has "failed and refused to meet, confer, discuss and negotiate with the Union" for the purpose of collective bargaining. That "on October 11, 1939, in protest against and as a consequence" of the acts of the Employer, "a majority of the employees then within the appropriate unit * * * went out on strike." That the employer was requested by the Union on January 7, 1940, to reinstate the striking employees but the Employer refused and has "at all times since then, continued to refuse to reinstate the said employees, for the reason that they joined and assisted the Union and engaged in concerted activities for the purpose of collective bargaining and other mutual aid and protection and * * * thereby discharged them on January 7, 1940."

Based upon these findings the Labor Board made its order commanding the Employer and its officers and agents to "cease and desist from: (a) encouraging membership in any company union or discouraging membership in the Laundry Workers Joint Board or any other labor organization of their employees' own choosing, by discriminating against employees in regard to hire or tenure of employment or any terms or conditions of employment". In subsequent paragraphs of the order the Employer is commanded to "cease and desist" from acts which would tend to nullify in whole or in part the provisions of

paragraph (a), and especially to " cease and desist " from " (d) * * * maintaining, enforcing or attempting to maintain or enforce or give effect or enter into any contract " with the " company union " or from " (f) refusing to bargain collectively with the Laundry Workers Joint Board." In addition the order commands that the Employer take the specified " affirmative action which the Board finds will effectuate the policies of the Act." The " affirmative action " commanded by the Board includes an offer to each of the striking employees of immediate reinstatement to the position held by each of them on the day immediately preceding the strike " without prejudice to any rights and privileges previously enjoyed by them " and to " make whole each and every one " of them " for any loss of pay they have suffered by reason of their respective discharges caused by Respondents' failure or refusal to reinstate them, by payment to each of them of a sum of money equivalent to that which they would each normally have earned from the date of Respondents' failure or refusal to reinstate them to the date of such offer of reinstatement, less any amounts earned by each of them during that period." In addition the Employer was commanded to " withdraw all recognition from the * * * Collective Bargaining Committee of the Employees of Holland Laundry, Inc., as the representative of any of their employees."

After notice of the order was served upon the Employer, the Labor Relations Board, pursuant to section 707 of the Labor Law, petitioned the Supreme Court to make and enter an order and decree enforcing the order of the Board. The findings of the Supreme Court in the earlier injunction action contradict the findings of the Labor Relations Board and the conclusions of the court are inconsistent with the conclusions of the Labor Relations Board. Enforcement of the order of the Board would nullify in large part the judgment of the court. Just as the Employer had objected to the Labor Relations Board holding hearings on a complaint charging the Employer with " unfair labor practices " after the Supreme Court had held that these practices were fair, the Employer on the same ground objected to the application for an order or decree of the court enforcing the order of the Board, and made a cross motion to vacate and set aside the order of the Board. At Special Term the objection was overruled and the application for an enforcement order

was granted; but the order of Special Term was unanimously reversed by the Appellate Division; the application of the Labor Relations Board was denied, with costs, and the cross motion of the Employer to vacate the order of the Labor Relations Board and set aside the order was granted.

The Supreme Court of New York, in the injunction action, declared that the contract of August 19, 1937, is " not contrary to public policy "; that all of the provisions contained therein are binding and enforcible; that a strike of the employees was unlawful since the employees had agreed in the contract not to strike. It found too that the striking employees " misrepresent the contract * * * by branding the same as a ' yellow dog contract ' or a ' company union contract '." Evidence produced at the hearing of the Board establishes almost beyond dispute that the contract of 1937 was prepared by the Employer, approved by a " Bargaining Committee " fostered by the Employer and signed by the employees at the instigation of the Employer. The contract in its terms substantially follows the " Balleisen formula " criticized by courts in other jurisdictions. Within three months of the decision in the injunction action the Supreme Court of the United States, in an opinion by Mr. Justice STONE, analyzing a contract in similar form and containing exactly similar provisions, unanimously held that such contracts " by their terms * * * imposed illegal restraints upon the employees' rights to organize and bargain collectively "; that the provisions in such contracts whereby each employee agreed " not ' to demand a closed shop or a signed agreement by his employer with any Union ' * * * foreclosed the employee from bargaining for a closed shop or a signed agreement with the employer, frequent subjects of negotiation between employers and employees," and is " in plain conflict with the public policy of the Act ". (*Nat. Licorice Co.* v. *Labor Board,* 309 U. S. 350, 360.) The court there also pointed out other provisions of the contract which are contrary to the public policy of the National Labor Relations Act. The National Labor Relations Act and the State Labor Relations Act " are not only alike in their provisions but are almost identical in their language ". (*Matter of Davega-City Radio* v. *Labor Board,* 281 N. Y. 13, 22.) Opinions of the Federal court construing the National Labor Relations

Act apply with equal force to the State Labor Relations Act, though they are of course not legally binding in that field. There can be no doubt that the order of the Board is valid and should be enforced by order of the Supreme Court pursuant to the provisions of section 707 of the Act unless the earlier judgment of the Supreme Court of the State precludes the Labor Board from investigating matters on which the court had passed judgment and from calling upon the Employer to defend acts which the Supreme Court had declared lawful.

" Sound public policy requires that different judicial decisions shall not be made on the same state of facts, and that a judgment rendered jurisdictionally and unimpeached for fraud shall be conclusive, as to the questions litigated and decided, *upon the parties thereto and their privies,* whom the judgment, when used as evidence, relieves from the burden of otherwise proving, and bars from disproving, the facts therein determined." (*Fulton Co. G. & E. Co.* v. *Hudson Riv. T. Co.,* 200 N. Y. 287, 296.) (Italics are new.) That principle requires that " what has been definitely determined by competent tribunals shall be accepted as irrefragable ". It has been said that within the field in which the principle is applicable it " renders white that which is black, and straight that which is crooked. *Facit excurvo rectum, ex albo nigrum.* No other evidence can afford strength to the presumption of truth it creates, and no argument can detract from its legal efficacy." (*Jeter* v. *Hewitt et al.,* 22 How. [U. S.] 352.) The reasons underlying the principle indicate the limits of the field within which the principle applies. " The fundamental principle governing the general doctrine of *res adjudicata* " is " that a party shall not be heard a second time on an issue which he has once been called upon and permitted to try and contest." (*Hendrick* v. *Biggar,* 209 N. Y. 440, 444.) " The rules of law upon this subject are founded upon these evident principles or axioms that it is for the interest of the community that a limit should be prescribed to litigation, and that the same cause of action ought not to be brought twice to a final determination. Justice requires that every cause be once fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question, and between those parties, should be closed forever. It is also a most obvious principle of justice that no man ought

to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger, he may well be held bound." Greenleaf's Evidence, sections 522, 523, quoted with approval in *Fish* v. *Vanderlip* (218 N. Y. 29, 37.) With exceptions not material here, every person is entitled to contest once an issue of fact or of law which affects his rights. A decision on such issues in favor of a party cannot " relieve " him from the burden of proving the facts again and of again convincing the court of the soundness of his position when that position is challenged by a stranger to the original contest. Nor does a judicial determination against a party bar him from contesting the same issues with a stranger to the original litigation. Only when there is identity of parties does a prior adjudication bar further contest.

It is clear that in accordance with these principles the employees named as defendants in the injunction action brought by the Employer cannot in subsequent litigation between the same parties again contest the issues finally decided against them in the injunction action. We assume, for the purposes of this appeal, that the Union has had such control of the defense in the injunction action that, in subsequent litigation between itself and the Employer, it also cannot challenge the findings in that action; though there may be doubt whether a judicial determination made in an action in which the Union, an association of changing members, represented one group of members, would be binding upon the Union in litigation where it represents a broader group. It is, however, unnecessary to decide such questions in this case for here neither the Union nor the employees who were named as defendants in the injunction action are parties to the proceeding or to the appeal, though their interests will be directly affected by its outcome. In such case the rule of *res judicata* does not in strict sense govern, though the public policy upon which the rule is based may place some limit upon the scope of the investigation of the Labor Relations Board and the effect of its decision.

The " board is empowered and directed," as provided by the Labor Relations Act, " to prevent any employer from engaging in any unfair labor practice." (Labor Law, § 706.) That power has been conferred upon the Board and that duty imposed upon

it by the Legislature in the " exercise of the police power of the state for the protection of the public welfare, prosperity, health and peace of the people of the state," and upon a legislative finding that " the denial by some employers of the right of employees freely to organize and the resultant refusal to accept the procedure of collective bargaining " tend to " lead to strikes, lockouts and other forms of industrial strife and unrest which are inimical to the public safety and welfare, and frequently endanger the public health." (Labor Law, § 700.) The Board is not solely a judicial body appointed to adjudicate impartially controversies between employers and employees. The Board is a public agency acting in the public interest; the instrument created by the Legislature to assure to the people of the State protection from the " unfair labor practices " described in the statute. (Cf. *Amalgamated Workers* v. *Edison Co.*, 309 U. S. 261.) An order of the Board commanding that an 'employer shall cease and desist from such unfair labor practices vindicates a public right to protection against conduct which the Legislature has found is inimical to the welfare of the People of the State. No agreement of the employee and employer and no litigation between them for the vindication of their private rights can deprive the public of its right to protection against labor practices which the Legislature has forbidden. Doubtless, as the Appellate Division pointed out in its opinion, the court, in making its determination in the injunction suit, gave consideration to the public interest but the People of the State had no opportunity in that action to contest the issue whether the Employer has been guilty of the " unfair labor practices " described in the complaint of the Labor Relations Board. A determination of the issues in an action between private parties cannot bar a contest to vindicate the public interest, as provided in the statute, just as a judgment in civil litigation between private parties does not bar a contest of the same issues by the State in a criminal action.

Contracts which are " the fruits of unfair labor practices " and which " stipulated for the renunciation by the employees of rights guaranteed by the Act " constitute " a continuing means of thwarting the policy of the Act." (*Nat. Licorice Co.* v. *Labor Board,* 309 U. S. 350, 361, *supra.*) No principle of " *res judicata* " or of " estoppel " and no public policy precludes an

investigation of the facts by the Labor Board in the public interest or bars the Board from making a valid order commanding the Employer to " cease and desist " from acts which upon such investigation appear to be unlawful and which constitute " a continuing means of thwarting the policy of the Act."

The question remains whether the parts of the order commanding in substance that the employer take affirmative action as therein described are valid either in whole or in part. The Board has express power to command such affirmative action " as will effectuate the policies " of the Act including " (a) withdrawal of recognition from  *  *  *  any employee organization or association  *  *  *  defined  *  *  *  as a company union or established, maintained or assisted by any action defined in this article as an unfair labor practice; (b) awarding of back pay "; and, (c) and (d), reinstatement with or without back pay of employees who have been affected by unfair labor practices described in the Act. (Labor Law, § 706, subd. [3].) Though the determination of the court in the injunction action is not conclusive in the investigation held by the Labor Relations Board for the protection of the rights of the public, that determination of the Supreme Court is binding upon both parties in disputes between themselves arising thereafter, and constitutes justification for action thereafter by the Employer towards its employees in accordance with that judgment. (See Freeman on Judgments [5th ed.], § 1040.) Certainly the employees who were defendants in that action could not thereafter again assert against the Employer rights based upon a claim that they were wrongfully dismissed and were entitled to reinstatement. In dealings with those employees the Employer might rely upon that decision. Refusal of their request for reinstatement was justified as a matter of law, and though the Employer cannot rely upon that decision in its dealings with other employees who were not parties to the action and though the Labor Board for the protection of the rights of the public may compel the Employer to " cease and desist " from further violations of the Labor Law in its relations with its employees, the Labor Relations Board cannot retroactively declare that acts of the Employer which at the time were justified by an existing valid judgment constitute unlawful labor practices. For that reason the Labor Board

could not in this proceeding command the Employer to reinstate, with or without pay, its employees who were justifiably refused reinstatement in accordance with a judgment binding upon both the Employer and those employees. If they are not reinstated there is no evidence or finding that a majority of the employees of the Holland Laundry, Inc., now in the appropriate bargaining unit have chosen the Union as their bargaining agency. In the absence of such a finding the Employer should not be compelled to bargain collectively with the Union.

The order of the Appellate Division should be reversed, without costs, the order of the Special Term modified, and the matter remitted to Special Term for entry of an order in accordance with this opinion. [See 295 N. Y. 568.]

LOUGHRAN, LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Ordered accordingly.