Joseph Nastasi, Claimant, *v.* State of New York, Defendant.
(Claim No. 27825.)

Court of Claims, January 15, 1949.

*Albert Jakobson* and *Benedict S. Rosenfeld* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Edward R. Murphy* and *Arthur W. Mattson* of counsel), for defendant.

LAMBIASE, J. Claimant has filed this claim " for false arrest and imprisonment in that on or about the 18th day of April, 1941, the authorities, officials, servants and or employees of the State of New York took claimant into physical personal custody and thereupon or shortly thereafter kept him in close physical custody and imprisonment and detention, placed and continuously kept him in Sing Sing, Comstock and Clinton Prison at Dannemora, New York, until on or about July 22, 1943, at which time an order was issued by the Supreme Court, State of New York, sustaining a writ of habeas corpus and ordering the claimant released from prison forthwith." (Claim, par. 2.) He alleges further " That said arrest and false imprisonment was illegal and actionable by reason of the fact that at said time and times claimant was under no obligation to serve any further time on account of any sentence which had been imposed against him by any court of the State of New York in that any sentence which had been imposed against him had expired prior to said April 18, 1941, and that as a consequence, his arrest, imprisonment and detention in prison was unlawful, illegal, improper and a trespass upon his rights." (Claim, par. 3.)

Claimant was convicted on January 30, 1929, in Bronx County Court of robbery second degree as a first offender and was given a sentence, the maximum of which was ten years and the minimum, five years. He was received in prison on January 31, 1929, and was released on parole September 3, 1932. He was declared delinquent on August 18, 1933, and was returned to prison. He was paroled for a second time on November 26, 1934, for the purpose of meeting a Federal warrant only, and on December 11, 1934, he was convicted of the felony of counterfeiting and possessing counterfeit money committed while at liberty on his first parole. He was discharged from Federal custody on March 13, 1935, and he then returned to the State of New York where he resumed reporting to the parole authorities thereof, and continued thus to report until some time in November, 1936, at which time, concededly, he left the State of New York and went to Chicago, Illinois, without first obtaining the consent of said parole authorities, in which city he was thereafter arrested and convicted of counterfeiting and for which crime he served a five-year term in Leavenworth. He

was again declared delinquent by the New York Parole Board on October 6, 1936, but was not taken into custody at that time. Upon his release from Leavenworth and on or about the 18th day of April, 1941, claimant was again taken into custody and was imprisoned by the State of New York, its officers, and agents, and was kept continuously in prison from that day until July 22, 1943, at which time he was released pursuant to an order in habeas corpus dated that day, the court holding in a memorandum dated July 19, 1943, that the maximum term of the original prison sentence which had been imposed upon claimant in 1929 had expired on July 4, 1943, for the serving of the remainder of which sentence, which the State claimed claimant had not as yet served, claimant had been rearrested and reincarcerated on April 18, 1941. Upon appeal by the State of New York to the Appellate Division, Third Department, said order was affirmed (*People ex rel. Nastassi* v. *Martin,* 267 App. Div. 629), although that conclusion, as was stated by the Appellate Division in its opinion (p. 630), was reached upon a theory " divergent from that of the Special Term."

It is the contention of the claimant that the Appellate Division by its aforesaid decision determined that when claimant was taken into custody and returned to prison on April 18, 1941, purportedly under the sentence which had been previously and in 1929 imposed upon him, such sentence had already expired; and he maintains that the determination by the Appellate Division on this point is conclusive and is *res judicata,* barring its re-examination by us herein. He submits that his arrest on April 18, 1941, and his confinement in prison thereafter and until July 22, 1943, were unlawful and illegal, and he asks for an award for damages alleged to have been sustained by him by reason thereof.

The State, on the other hand, contends that between March 13, 1935, and some time in November, 1936, as hereinbefore set forth, claimant's status was that of a prisoner. It maintains that subsequent to November, 1936, claimant's status was that of an escaped prisoner, he having been declared delinquent by the New York State Parole authorities on October 6, 1936, when he failed to report and a warrant for his rearrest having been duly issued and delivered to the New York City police for execution although its execution had been delayed because of the inability of the police to find claimant. Its position is that claimant's escape interrupted the service of his original maximum sentence with the consequence that the time elapsing between his escape in November, 1936, and his rearrest in

1941 cannot be credited as part of his original maximum term. It cites in support of its position thus taken *People ex rel. Atkins* v. *Jennings* (248 N. Y. 46, 53); *Anderson* v. *Corall* (263 U. S. 193, 196), and *People ex rel. Newton* v. *Twombly* (228 N. Y. 33, 36), and maintains that on the basis of such authorities claimant's maximum sentence had not expired prior to April 18, 1941. It argues in its brief, submitted herein, that such sentence did not expire until July 3, 1944. It submits further that the decision of the Appellate Division, to which reference has hereinbefore been made, is not conclusive and *res judicata* herein on the issue of the date of the termination of claimant's original maximum sentence; and its position is that said issue is still open for us to determine herein. It urges that we should decide said issue applying the principles of law as established in the cases which it has cited to us and which are immediately above set forth.

We agree with the claimant herein that by its decision (*People ex rel. Nastassi* v. *Martin,* 267 App. Div. 629, *supra*) the Appellate Division determined that claimant's original maximum sentence had expired prior to the 18th day of April, 1941, when claimant was rearrested and reimprisoned. That being so, does the principle of *res judicata* apply herein, and if it does, to what extent.

It is well established that where a matter has been submitted to an authorized judicial tribunal, its decision is final between the parties until it has been reversed, set aside or rejected; and the rule of *res judicata* applies to all judicial determinations, whether made in actions, or in summary or special proceedings, or by judicial officers in matters properly submitted for their determination. (*People ex rel. McCabe* v. *Matthies,* 179 N. Y. 242.)

" There are two main rules of *res adjudicata.* One is that a judgment of a competent court, on the merits, is a bar to any future suit between the same parties or their privies upon the same cause of action. The other is that a point directly in issue and judicially passed upon in a judgment of a competent court, on the merits, cannot be again drawn in question in any future action between the same parties or their privies whether the cause of action is identical or not. A determination coming within the latter rule is not strictly speaking a bar or defense, but simply conclusive evidence of the fact or point determined, while a determination coming within the former rule is a bar or complete defense, the cause of action being merged in the judgment and the scope of the estoppel being complete and all

inclusive [citing cases]." (*Hollenbeck* v. *Ætna Cas. & Sur. Co.*, 215 App. Div. 609, 611, 612, affd. 243 N. Y. 540.) " A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first (*Cromwell* v. *County of Sac*, 94 U. S. 351; *Reich* v. *Cochran, supra*). It is not conclusive, however, to the same extent when the two causes of action are different, not in form only (*Baltimore S. S. Co.* v. *Phillips, supra*, p. 321), but in the rights and interests affected. The estoppel is limited in such circumstances to the point actually determined (*Cromwell* v. *County of Sac, supra*). The distinction, though elaborated with special emphasis in many judgments of the Supreme Court [citing cases], is not the doctrine of that court alone. Both in this State and elsewhere it is recognized as settled law [citing cases]." (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304, 306–307.)

" ' Sound public policy requires that different judicial decisions shall not be made on the same state of facts, and that a judgment rendered jurisdictionally and unimpeached for fraud shall be conclusive, as to the questions litigated and decided, *upon the parties thereto and their privies*, whom the judgment, when used as evidence, relieves from the burden of otherwise proving, and bars from disproving, the facts therein determined.' (*Fulton Co. G. & E. Co.* v. *Hudson Riv. T. Co.*, 200 N. Y. 287, 296.) (Italics are new.) [*Sic.*] That principle required that ' what has been definitely determined by competent tribunals shall be accepted as irrefragable '. It has been said that within the field in which the principle is applicable it ' renders white that which is black, and straight that which is crooked. * * * No other evidence can afford strength to the presumption of truth it creates, and no argument can detract from its legal efficacy.' (*Jeter* v. *Hewitt et al.*, 22 How. [U. S.] 352.) * * * ' The rules of law upon this subject are founded upon these evident principles or axioms that it is for the interest of the community that a limit should be prescribed to litigation, and that the same cause of action ought not to be brought twice to a final determination. Justice requires that every cause be once fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question, and between those parties,

should be closed forever. It is also a most obvious principle of justice that no man ought to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger, he may well be held bound.' Greenleaf's Evidence, sections 522, 523, quoted with approval in *Fish* v. *Vanderlip* (218 N. Y. 29, 37.) With exceptions not material here, every person is entitled to contest once an issue of fact or of law which affects his rights." (*Matter of New York State Labor Relations Bd.* v. *Holland Laundry, Inc.*, 294 N. Y. 480, 493-494, motion for reargument denied 295 N. Y. 568; see, also, *Commissioner of Internal Revenue* v. *Sunnen*, 333 U. S. 591.)

It is immaterial that the questions alleged to have been settled by a former adjudication were determined in a different kind of proceeding or in a different form of action from that in which the estoppel is set up, the parties and the issues being such as otherwise would be concluded. (50 C. J. S., Judgments, § 691.) It is also immaterial that the two proceedings are instituted for different purposes and seek different results. (*People* v. *Cryan*, 123 Misc. 358; *Finigan* v. *Board of Education of City of N. Y.*, 153 App. Div. 429; *Matter of Mathewson* v. *Brockett*, 127 Misc. 895.) If a particular point or question is in issue in the second action and the judgment will depend on the determination of the particular point or question, a former judgment between the same parties will be final and conclusive in the second if that same point or question was in issue and adjudicated in the first suit. (*Foster* v. *White & Sons*, 244 App. Div. 368, affd. 270 N. Y. 572; *Allen* v. *United States Fire Ins. Co.*, 245 App. Div. 31, affd. 270 N. Y. 597.) An order or a ruling made in a special proceeding, if it is in the nature of an adjudication of some contested claim or right, has the same effect as a bar as a formal judgment. (*Finigan* v. *Board of Education of City of N. Y., supra;* 50 C. J. S., Judgments, §§ 693, 694.)

The habeas corpus proceeding presented the issue of the legality of claimant's detention in prison. The Attorney-General of the State of New York appeared and participated therein. He resisted the discharge of the claimant, and later took an appeal from the order of the Special Term discharging the claimant. (Civ. Prac. Act, § 1275; *People ex rel. Berman* v. *McDonnell*, 269 App. Div. 864.) He entered into a stipulation of facts dated March 24, 1943, with the then attorney for the claimant, which is part of the record in the habeas corpus proceedings; and he argued in said proceeding all of the questions

and points which he has urged herein, including the question or issue as to when claimant's maximum original sentence expired. The Special Term, in its decision dated July 19, 1943, concluded that claimant's original maximum sentence expired on July 4, 1943, and in so doing, it gave claimant no credit on his sentence for elapsed time beyond October, 1936, when claimant was last declared delinquent by the New York State Parole Board. The Appellate Division, on the other hand, concluded on the same issue that " Relator should receive credit for the time which has elapsed after his return to New York authorities on March 13, 1935, as the statute (§ 219, *supra*) did not permit parole, and he was a prisoner though allowed to be at large until April 18, 1941, when he was placed in a New York prison following his imprisonment in Leavenworth." (*People ex rel. Nastassi* v. *Martin,* 267 App. Div. 629, 631, *supra.*) Arrived at upon a theory " divergent from that of the Special Term ", the decision of the Appellate Division, while affirming the Special Term, determined that claimant's maximum term expired prior to April 18, 1941, and not on the day found by the Special Term. The difficulty with the State's position herein is that the issue of the termination of claimant's maximum sentence is no longer open, no matter how persuasively it argues. (*People ex rel. Rothermel* v. *Murphy,* 249 App. Div. 867, 868.) It was determined by a court of competent jurisdiction after due notice to all parties in interest, and the proceedings were regular. By that determination the State must abide. (*Hoff* v. *State of New York,* 279 N. Y. 490, 494.)

We hold, therefore, that the determination of the Appellate Division that claimant's original maximum sentence had expired prior to the 18th day of April, 1941, is conclusive evidence herein of that fact or point thus determined, and is *res judicata* on that point with the result that it cannot be again drawn in question.

It is true that the right to a writ of habeas corpus for relief from imprisonment is not barred by reason of the fact that on the same state of facts a prior application for the writ had been made and the writ was refused or by final order therein the prisoner was remanded (*People ex rel. Lawrence* v. *Brady,* 56 N. Y. 182), and that a prisoner who has been refused a discharge on habeas corpus need not necessarily appeal, though the statutory remedy of appeal is open to him, but he may make another direct application for the writ, subject, however, to the rules controlling a second application. (10 Carmody on New York Pleading and Practice [2d ed.], § 55.) And in *Matter of Quinn* (2 App. Div. 103, 104, affd. 152 N. Y. 89), the court held

that an appeal from a final order discharging a prisoner on habeas corpus could not be maintained by the officer having him in custody as he had no interest in the matter although he was a party to the writ; and then the court went on to say at page 104 of 2 Appellate Division: "*  *  *  it is settled law that, with the exception of a narrow class of cases, such as the custody of infants, a decision on habeas corpus does not create an estoppel, even upon renewals of the writ, and never operates as a former adjudication in other litigations. (*People ex rel. Lawrence* v. *Brady,* 56 N. Y. 182)." However, in Corpus Juris Secundum (Vol. 39, Habeas Corpus, § 104 p. 698, n. 6) the statement contained in the *Quinn* case (*supra*) against the proposition that the order of discharge is *res judicata* in a subsequent suit between the relator and the officer who held him in custody is described as dictum. (See, also, *Castor* v. *Bates,* 127 Mich. 285.) But it is equally true that a prisoner who has been discharged by a final order upon a writ of habeas corpus stands on a different footing, and that said order constitutes a determination that at the time he was improperly restrained (*Turgeon* v. *Bean,* 109 Me. 189), and subject to the provisions of section 1269 of the Civil Practice Act, he shall not be again imprisoned, restrained, or kept in custody for the same cause.

In our own research we have found the case of *Losaw* v. *Smith* (109 App. Div. 754), decided by the Appellate Division, Third Department, November 21, 1905. We deem it necessary in the orderly consideration of the issues herein to set out the facts of this case in some detail. They are as follows: Smith sued the plaintiff, Losaw, in Justice's Court for trespassing on real property. Issue was joined in said action and a trial was had, which resulted in a verdict of a jury in favor of Losaw, and judgment was entered for costs against Smith. An appeal was taken to the County Court, where the judgment of the Justice's court was reversed, and a judgment was entered thereon against Losaw in favor of Smith for $55.24. Smith caused execution to be issued against the property of Losaw upon said judgment, which execution was returned wholly unsatisfied. Thereafter, and after the time to appeal from the judgment had expired, Smith caused an execution to be issued thereon against the person of Losaw, and Losaw was taken by the sheriff under and by said execution against his person and confined in the county jail. While so confined in the county jail Losaw presented a petition to the County Court for a writ of habeas corpus, and such writ was issued, to which writ the sheriff

made his return, claiming to hold said Losaw under and by virtue of said execution against his person. On the return day of the writ the proceeding was adjourned, and notice was given to the attorneys of Smith as provided by section 2038 of the Code of Civil Procedure then in effect. On the adjourned day Smith did not appear and Losaw was discharged from custody. Thereafter Losaw brought an action against Smith for false imprisonment. Issue was joined, and on the trial thereof the court held as a matter of law that the imprisonment of Losaw was wrongful, and submitted to the jury the question of damages only. A verdict was rendered in favor of the plaintiff, on which the judgment appealed from was entered. The court in its opinion, after citing the *Brady* and *Quinn* cases (*supra*), and quoting from them, said at page 756 of 109 Appellate Division: " We hold, therefore, that the order discharging Losaw from custody in the habeas corpus proceedings was not *res adjudicata* as against the defendant in this action." Although said case was decided some forty-three years ago, as far as we have been able to ascertain, it has never been cited in any reported case.

It has been stated that " Perhaps the most fundamental characteristic of Anglo-Saxon law as distinguished from other systems of jurisprudence is its deference to the principle of *stare decisis,* which may be defined as the obligation of courts to adhere to the results of decided cases and to refrain from disturbing general principles which have been established by judicial determination. [Citing cases.] The theory underlying this principle is that ' certainty is of the very essence of the law.' ' That shifting and changing rules or principles do not constitute law,' and that ' The avoidance or prevention of litigation through the establishment by the courts of fixed and certain rules is a useful and beneficent effect of the litigations had.' (*Matter of Grifenhagen* v. *Ordway,* 218 N. Y. 451, 458.)" (*Matter of Herle,* 165 Misc. 46, 49.) Therefore, in arriving at our decision herein we were not unmindful of the *Losaw* case (*supra*), and we gave it consideration; but the persuasiveness and sound reasoning of those later decisions, cited herein, expounding and applying the rules of *res judicata,* impelled us to the conclusion that under the facts herein, controlling weight and effect had to be given to them unless we were to do violence to the principle of *stare decisis.* Under the circumstances herein, venturesome indeed would be the court of first impression which would fail to accord controlling effect to the determination of the Appellate Division in the habeas corpus proceedings on the issue of the

termination of claimant's original maximum sentence. (*Guaranty Trust Company of N. Y.* v. *State of New York,* 191 Misc. 259, appeal dismissed 275 App. Div. 725.)

We find, therefore, that claimant's arrest on April 18, 1941, was unlawful and illegal, and that his detention in prison thereafter and until July 22, 1943, was also unlawful and illegal. We conclude that he is entitled to an award for damages against the State, and we now proceed to a consideration of that question.

Claimant alleges "That said imprisonment caused this claimant to suffer great mental anguish and distress and denied him his right to pursue happiness and a gainful employment and inflicted upon him humiliation and anguish " (claim, par. 4); and in paragraph 8 of his claim he alleges a particular item of damages in the sum of $2,600 for " legal fees and miscellaneous expenses ".

The measure of damages for false imprisonment, generally speaking, is such a sum as will fairly and reasonably compensate the injured person for the injuries caused by the defendant's wrongful act, including any special pecuniary loss which is a direct result of the false imprisonment. Any reasonable and necessary expense incurred as a result of an unlawful imprisonment may constitute a proper item of damage, such as the expense of procuring a discharge from arrest or imprisonment. The legal expenses of plaintiff incurred in procuring his discharge from arrest are a proper item of damage. (*Worden* v. *Davis,* 195 N. Y. 391; *Allen* v. *Fromme,* 195 N. Y. 404; *Nossek* v. *Todd & Son,* 160 Misc. 528.) We do not deem it necessary to discuss this phase of the case in any greater detail since it is amply covered in our accompanying decision.

The record on appeal in *People ex rel. Nastassi* v. *Martin* (267 App. Div. 629, *supra*) we determine to have been properly received in evidence in view of the legal effect which we have given to that decision in our consideration of this case (*Phipps* v. *Oprandy,* 69 App. Div. 497), and we reserve an exception thereon to the State. Furthermore, as to the return, commitment, memorandum decision dated April 14, 1943, order dated April 17, 1943, and memorandum dated July 19, 1943, forming part of said record, the question of their admissibility as part of said record is academic since copies of the same were separately offered and admitted in evidence. The State made no objection to the admission of said record on appeal on the ground that it was not properly authenticated (Civ. Prac. Act., § 382), and we are of the opinion that the specific objection made by the State is unavailing. Equally unavailing is the general objection.

(*Fountain* v. *Pettee,* 38 N. Y. 184; *Daly* v. *Byrne,* 77 N. Y. 182; *Ward* v. *Kilpatrick,* 85 N. Y. 413, 417; *People* v. *Smith,* 172 App. Div. 826, 832, 833, affd. 219 N. Y. 222; *People ex rel. New York Central R. R. Co.* v. *Vincent,* 68 N. Y. S. 2d 202.) Our courts have consistently held that when evidence is received over a general objection, the ruling will not be held erroneous unless there is some ground which could not have been obviated had it ·been specified, or unless the evidence in its essential nature is incompetent. (*Wightman* v. *Campbell,* 217 N. Y. 479, 482; *Novak* v. *Melnyk,* 224 App. Div. 492, 495, affd. 252 N. Y. 558; *Tooley* v. *Bacon,* 70 N. Y. 34.) That part of the record on appeal to the Appellate Division which the State seeks to have excluded is competent in its essential nature, and the embodied facts are material. We see no harm or prejudice to the State in this ruling.

We are, therefore, in an accompanying decision making an award which we feel adequately compensates claimant for the damages sustained by him.