Kohv v. Pennsylvania Labor Relations Board

*Thomas M. Garrity,* for appellant.

*James F. Wildeman,* for appellee.

FORREST, J., December 16, 1955.—This is a review of the order of the Pennsylvania Labor Relations Board on the application of an employer who avers that such order requiring him to offer two former employes full reinstatement of their positions should be

vacated for the reasons: (1) That there is no substantial or legally credible evidence to support the board's findings of fact or conclusions that the employer violated the provisions of section 6(1) (c) of the Pennsylvania Labor Relations Act, of June 1, 1937, P. L. 1168, as amended, 43 PS §211.6, and (2) that a settlement agreement between the parties entered into before the date of the order precludes a finding of unfair labor practices which constitutes the basis of the order.

The nature and scope of review by the court of common pleas in these cases of alleged unfair labor practices is set forth in section 9(b) of the act, 43 PS §211.9, prescribing that "the court . . . shall have . . . exclusive jurisdiction . . . to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside, in whole or in part, the order of the board," but "the findings of the board as to the facts, if supported by substantial and legally credible evidence, shall . . . be conclusive."

On review of the testimony, the court considers whether there is substantial and legally credible evidence to support the findings of the board: Union Trust Co. of Pittsburgh's Petition, 342 Pa. 456 (1941), and whether the conclusions deduced therefrom are reasonable and not capricious. Substantial evidence is more than a mere scintilla; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion: Pennsylvania Labor Relations Board v. Kaufmann Dept. Stores, Inc., 345 Pa. 398, 400 (1942); Pennsylvania Labor Relations Board v. Sansom House Enterprises, Inc., 378 Pa. 385, 390 (1954).

It is the function of the board, not the court, to appraise conflicting evidence, to determine the credibility of witnesses, to resolve primary issues of fact, and to draw inferences from the established facts and cir-

cumstances: DelBuono Jr. v. Pennsylvania Labor Relations Board, 370 Pa. 645 (1952). With the foregoing principles in mind, we have examined the testimony and the findings, conclusions and order of the board sur exceptions.

This final order of the board orders the reinstatement of only two former employes, Roy Prosser and John Furman. It is predicated upon conclusions of law: (1) That Kohv has interfered with, restrained or coerced these employes in the exercise of their right to self-organization and collective bargaining within the meaning of section 6(1) (a) of the act, 43 PS §211.6, and (2) that Kohv has discriminated against these employes in regard to hire, tenure or terms of employment within the meaning of section 6(1) (c) of the act, 43 PS §211.6.

The findings of fact constituting the basis of the conclusions of law are essentially as follows: Yale Builders Co. awarded Kohv a subcontract for certain carpentry work on a certain development known as Curtis Hills. Prosser and Furman were laid off by Yale Builders Co., but in accordance with a previous agreement were immediately hired by Kohv to begin work three days later on October 12, 1953, which they did. On October 15, 1953, two union representatives met with the carpentry employes on the Curtis Hills job at the job site. As a result 47 of the employes signed authorization cards on behalf of the union. Kohv witnessed these activities. As Prosser, Furman and another employe were leaving the meeting, Kohv said to them, "You fellows signed union cards, and you signed your jobs away". On the next day, October 16, 1953, Prosser and Furman were summarily discharged by Kohv, who gave them no reason, but merely paid them off. Picketing commenced on the job site on October 19, 1953, but the carpentry work continued with new employes replacing the striking carpenters.

A meeting between the union representatives and Kohv was held on October 28, 1953, at which it was agreed, subject to approval of the men, that Kohv would hire 14 of the striking employes, and six additional such employes, but not Prosser, that all Kohv's employes would thereafter be union men, and that the union would cease picketing. The men accepted the agreement; the union withdrew the picket line and Kohv employed 14 of the picketers and in addition, rehired four additional striking employes who were needed.

Kohv contends not only that the above findings are not supported by the evidence but that the board erred in failing to find that at a meeting on October 28, 1953, at the office of Yale Builders Co., which was attended by Kohv and by union representatives, it was agreed that all matters in dispute between the parties, including Kohv, would be considered as settled, that no charge of unfair labor practices would be filed against Kohv and that Kohv would hire the strikers who were former employes of Yale Builders Co., excepting however Prosser because of his unsatisfactory work.

The exceptions constituting the basis for this petition for review raise the question of whether the findings of the board are supported by substantial and legally credible evidence. After making a careful examination of the testimony, we conclude that the answer in the case of each finding must be in the affirmative. Mr. Kendrick, special representative of the union, testified that Kohv witnessed the meeting between the union organizers and the employes, and that this employer observed the men signing union cards. Mr. Prosser stated that within 15 minutes thereafter, Kohv strode up to Furman and said, "When you fellows signed these cards, you signed your jobs away". Also, there is evidence that Kohv told Prosser that he was "The fellow who called up the union". This is

significant in that other evidence indeed indicated that Prosser had been the person chiefly responsible for bringing the union into the picture. Also significant is the fact that Kohv curtly fired Prosser and Furman without a word of explanation to either.

The employer in this case contends that Walter Thylo, who "contributed as much to the union activities as the other employes, was retained in the employment of petitioner without discrimination". This is a make-weight argument of little significance, even if the fact alleged be conceded. Otherwise, by a show of impartiality toward a few, an employer might attempt to prove nondiscrimination as to many.

Concerning the meeting on October 28, 1953, it appears from the evidence that Kohv was present, together with the representatives of the union, Mr. Joseph Elder and Mr. Ginnetti. Kohv then and there orally promised to reëmploy the men who had been out on strike, except for Roy Prosser, as soon as there was need for them. The union, according to Mr. Elder, "agreed to settle the thing in order to get the thing over with". In brief, it appears that Prosser, the employe most active in promoting the union and in calling the union on the job was placed on the sacrificial altar of the goddess of expediency. Significantly, the picket line was withdrawn the very next day. There was some evidence that Prosser's incompetence or carelessness was the reason for his discharge. However, there was ample evidence to sustain the finding of the board that Kohv's vindictiveness because of Prosser's union activities was the real reason. Kohv stated that Prosser negligently destroyed certain material. However, his answer to a question as to whether such supposed conduct would normally induce him to discharge an employe was that "I believe that I would do that because it takes quite some time to do that work and there was a loss of time and money involved". This

testimony evidently was not convincing to the board nor is it to us. Also, although Thylo, a fellow-employe, observed Prosser do the work, he was not called to testify. Finally, in this connection, Prosser himself denied performing the work improperly. The inquiry centers upon the employer's motivation. Any search for the state of mind of the employer is difficult and mathematical certitude is unattainable. The board concluded that Kohv's explanation of his conduct toward Prosser was not a satisfactory refutation of the inference of discrimination which it reasonably drew from this employer's conduct.

"The prompt and peremptory nature of the discharge, the form in which it was given, the failure of the company (employer) to sustain the charges against the employe, the attitude of extreme hostility to the union on the part of the officers of the company, the condemnation of the employes by the management for joining the union . . . all tended to support the findings of fact, particularly the finding that (the employe) was discharged not because of any serious neglect of duty but because he had joined the union": Pisarev Co. v. Amalgamated Meat Cutters, etc., 345 Pa. 123, 124-25 (1942). See also the more recent case of Pennsylvania Labor Relations Board v. Sansom House Enterprises, Inc., supra, at page 392, where it was said that evidence that "the employer discharged the employe within one or two days after the employe either joined or became active in supporting the union . . . supports an inference that union activity was the motivating factor in the discharge".

The case made out against the employer pertaining to the employe, Furman, is not as strong as that pertaining to Prosser. Kohv declared that Furman was laid off because of lack of work. Nevertheless, the evidence is sufficient to support the conclusions of law and the order of the board. It shows that other car-

penters were hired shortly after Furman's discharge, but fails to explain why Furman was not kept on the job or reëmployed.

The employer's final contention is that the oral settlement agreement of October 28, 1953, constitutes a bar to the making of a finding of unfair labor practices prior to that date; that a part of this agreement was that Prosser would not be reëmployed by Kohv; that the policy of the law should be to promote the voluntary settlement of differences between the parties, and this policy would be thwarted if individual union members were permitted to file unfair labor charges after their union and employer had voluntarily entered into an agreement resolving the unfair labor charges. The board adopted the view that "Whereas in this case, an employer, guilty of a discriminatory discharge, insists that as a condition of settlement the said employe shall not be rehired, it would . . . be contrary to . . . public policy to allow such an agreement to bar the statutory right of said discharged employe. Hence, the agreement does not prevent the adjudication of the complaint as to Prosser and Furman". Stated otherwise, the proposition is that a contract between an employer and a labor union which would deprive a union member of individual rights, guaranteed to him by the Pennsylvania Labor Relations Act and existing prior to the date when the union became his exclusive bargaining agent, is contrary to public policy and unenforceable. The agreement in this case was informal. It was submitted to the employes for approval and for all that appears it was approved at least by all of the unionized employes which, according to a representation in a supplemental brief filed by Kohv, included Prosser and Furman.

In this case the employer contends that the settlement of labor controversies by agreement should be encouraged as a matter of public policy. With this

no reasonable person would disagree. However, "The board asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices. The public right and the duty extend not only to the prevention of unfair labor practices by the employer in the future, but to the prevention of his enjoyment of any advantage which he has gained by violation of the act, whether it be a company union or an unlawful contract with employes, as the means of defeating the statutory policy and purpose. Obviously employers cannot set at naught the . . . act by inducing their workmen to agree not to demand performance of the duties which it imposes . . .": National Licorice Co. v. National Labor Relations Board, 309 U. S. 350, 364, 60 S. Ct. 569, 577 (1940).

"Contracts which are the 'fruits of unfair labor practices' and which 'stipulated for the renunciation by the employes of rights guaranteed by the act' constitute 'a continuing means of thwarting the policy of the act'," (citing National Licorice Co. case, supra). "No principle of 'res judicata' or of 'estoppel' and no public policy precludes an investigation of the facts by the Labor Board in the public interest or bars the Board from making a valid order commanding the Employer to 'cease and desist' from acts which upon such investigation appear to be unlawful and which constitute 'a continuing means of thwarting the policy of the act' ": New York State Labor Relations Board v. Holland Laundry, Inc., 294 N. Y. 480, 495, 63 N. E. 2d 68, 75 (1945).

The rule has been stated thus: "An administrative proceeding under a labor relations statute, such as with respect to unfair labor practices, may not be affected by any private agreement between the employer and the employes, or between the employer and the union . . .": 56 C. J. S. §28 (70).

Furthermore, Prosser was not employed by Kohv at any time after the union became the bargaining agent for the employes; in fact the agreement specifically excluded him as an employe. Therefore, it appears that the union never was his agent in connection with the subject at hand.

The Pennsylvania Labor Relations Board has filed a petition to the court to enter a decree "enforcing the final order of the Board". The act empowers the court "to make and enter a decree enforcing . . . the order of the board": 43 PS §211.9. In Foster et ux. v. International Brotherhood of Teamsters, etc., 45 D. & C. 591 (1942), it was said on page 593:

"Where an appeal has been taken from a decision of the board, there is no final order to be enforced, and for this reason alone, if orderly procedure is to be followed, the petition for enforcement of the board's order should not be presented, at least until a final decision." Nevertheless, the decisions of the lower courts are not uniform on this matter. See Metropolitan Life Insurance Co. v. Insurance Guild, etc., 48 D. & C. 355 (1943), in which it is stated on page 360:

"The other question in the case is whether the board has the right to petition for enforcement of its order *while a review is pending*. Inasmuch as this right is conferred by the act of assembly without limitation or restriction, we hold that such petition may be filed at any time. Whether the common pleas court desires to hear and dispose of the board's petition to enforce and the appellant's petition to review at the same time seems to be a matter of judicial discretion in each particular case."

The act does not specifically require that the order of the board be affirmed before a petition for enforcement thereof may be filed. The employer is not harmed by the filing of such petition. Only if an en-

forcement order were entered before the final disposition of the employer's appeal could he be harmed. Since we will finally dispose of the appeal herewith, we deem it harmless to the employer, and in accord with the manifest purpose of the act to promote a prompt compliance with proper orders thereunder to enter an enforcement order at this time. However, there should be a rehearing by the board and a supplemental order entered by the board as to the amount of pay to which the discharged employes are entitled. See W. T. Grant Company, Inc., v. United Retail Employees, etc., 347 Pa. 224, 225 (1943); Pennsylvania Labor Relations Board v. Hanover Cab Co., Inc., 76 D. & C. 373 (1950).

And now, December 16, 1955, it is ordered, adjudged and decreed that the appeal of Al Kohv be and the same is hereby dismissed and the prayer of the Pennsylvania Labor Relations Board for the enforcement of its order is granted; and the record is remanded to the Pennsylvania Labor Relations Board for the sole purpose of ascertaining the amount of wages, if any, due the employes, Roy Prosser and John Furman.