PAUL WATERMAN, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 32473.)

Court of Claims, March 1, 1955.

*Wilfred E. Hoffman* and *Robert W. Hartnett* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Quentin E. Grant* of counsel), for defendant.

RYAN, J.   Claimant sues the State of New York for damages for being detained in its penal institutions, first at Elmira Reformatory and later at Attica Prison, for one year, ten months and twenty-nine days in excess of five years, his maximum sentence.   On October 25, 1945, claimant pleaded guilty to the crime of robbery in the third degree.   On November 28, 1945, the County Court of Onondaga County, upon claimant's plea of guilty and upon a recital that claimant was over the age of sixteen and was nineteen years of age on November 15, 1945, directed as follows:   '' Ordered and adjudged by the Court that the said Paul Waterman for the crime of Robbery in the third degree aforesaid, whereof he is convicted be, and he hereby is committed to the Reception Center of the Department of Correction at Elmira, New York, for classification and confinement pursuant to Article 3-A of the Correction Law ''.

That order is the judgment of conviction and its date, not the date of the plea, is determinative.   (*Blaufus* v. *People*, 69 N. Y. 107; *People* v. *Fabian*, 192 N. Y. 443; *People* v. *Cohen*, 204 Misc. 155.)

Robbery, third degree, is a crime punishable by imprisonment for not more than ten years.   (Penal Law, § 2129.)   However, imprisonment in Elmira Reformatory is limited to five years. (Correction Law, § 288.)

Observe at this point that the order of conviction committed Waterman but did not sentence him.   The commitment was in accordance with subdivision 1 of section 61 of the Correction Law.   (See Governor Dewey's Memorandum approving L. 1945, ch. 554.   See, also, 1945 Atty. Gen. 188.)   The omission of a direction for sentence in the judgment of conviction of the Onondaga County Court was not unusual.   Indeed such omission developed into a common practice.   (*People ex rel. Johnson* v. *Martin*, 203 Misc. 546, affd. 283 App. Div. 478, affd. 307 N. Y. 713.)   The Legislature remedied this situation by amending

section 1931 of the Penal Law. (L. 1949, ch. 389, eff. April 5, 1949.) That amendment made article 12 of the Correction Law applicable to this claimant's situation. Such legislation was remedial and designed to correct imperfections in the prior law. Accordingly it was to be liberally construed and constituted an exception to the general rule that statutes are not to be given a retroactive operation. McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 54.) Here it may be noted that on the effective date of the statute five years had not elapsed from November 1, 1945, the operational date prescribed in subdivision 1 of section 61 of the Correction Law.

Waterman was several times paroled and several times declared delinquent. He was last returned to Elmira January 30, 1953. He was transferred to Attica March 19, 1953. On that date he had already spent more than five years within the walls of Elmira Reformatory. On June 25, 1953, the County Court of Wyoming County sustained a writ of habeas corpus and discharged him upon the authority of *People ex rel. Johnson* v. *Martin* (*supra*) and upon the ground that it was the legislative intent, when section 288 of the Correction Law was adopted, to limit confinement in Elmira Reformatory to five years.

The determination of the Wyoming County Court that Waterman was held beyond the legal term of his confinement is binding upon this court. *Nastasi* v. *State of New York* (194 Misc. 449) reversed on the point that there was nothing in the record to indicate that the declaration of delinquency and the warrant of arrest were not valid on their face when issued. (275 App. Div. 524, affd. 300 N. Y. 473.) The facts herein are in substantial accord with the facts in the *Johnson* case (203 Misc. 546, affd. 283 App. Div. 478, affd. 307 N. Y. 713, *supra*). The Attorney-General concedes as much but argues that judicial error was the cause of claimant's confinement in excess of five years. This is not so. The amendment of section 1931 of the Penal Law in 1949 was designed to correct any judicial error. Of this the State's Department of Correction was well aware. (See its memorandum published at the time of the amendment. 1949 N. Y. State Legis. Annual, p. 36.) The Attorney-General had already rendered an opinion stating: " a sentence in which no maximum or minimum is imposed by the court is an indefinite sentence, the type of sentence appropriately imposed heretofore upon commitment of prisoners to the New York State Vocational Institute and Elmira Reformatory, and such a conviction might popularly be designated a ' reformatory sentence.' " (1946 Atty. Gen. 208.)

Moreover the annual reports of the Department of Correction disclose that between November 1, 1945, and April 1, 1949, commitments to the Reception Center at Elmira, which failed to prescribe sentences, numbered into the hundreds.

Claimant is entitled to an award herein but not in the amount demanded which is $6,000 for loss of earnings and $15,000 for shame, humiliation and loss of freedom. Claimant's record of employment, when free, is not impressive for its zeal or industry. His desire to keep out of trouble, if existent, was lacking in perseverance to judge by his frequent violations of parole. This court believes that the amount of $3,500 is adequate in the circumstances. Submit findings in accordance with this opinion.