OPINION OF THE COURT
Frank P. Milano, J.
Claimant moves pursuant to CPLR 3212 for partial summary judgment as to defendant’s liability on this wrongful confinement claim. The claim alleges that the New York State Department of Correctional Services (DOCS) unlawfully added a period of mandatory postrelease supervision (PRS) onto claimant’s sentence even though the PRS term was never imposed by the sentencing judge. Claimant further alleges that the administratively imposed PRS term ultimately resulted in claimant’s unlawful confinement “for a period of at least 676 days,” until claimant’s release on May 28, 2008 pursuant to a judgment and order of the Monroe County Supreme Court, issued upon a writ of habeas corpus.
Defendant opposes the motion and cross-moves for dismissal of the claim, pursuant to CPLR 3211 (a) (7), “on the grounds that the claim fails to state a cause of action against the defendant.”
Defendant concedes that the facts essential to resolution of these motions “are not in dispute.” On August 17, 1999, claimant was sentenced by the Monroe County Supreme Court to a determinate term of two years’ incarceration upon a conviction of criminal possession of a weapon in the third degree. Neither the sentence nor the sentencing commitment order included imposition of a period of postrelease supervision.
Despite the clear and unambiguous terms of the sentence and sentencing commitment order, DOCS administratively imposed a three-year period of PRS to the sentence, to commence upon claimant’s release from incarceration on July 10, 2000. This, even though the sentencing judge had discretion to set claimant’s (a one-time violent felony offender) term of PRS, had he imposed it, at between IV2 and 3 years under Penal Law § 70.45 (2). While subject to the administratively imposed period of PRS, claimant was arrested and subsequently convicted of criminal possession of a controlled substance in the fourth degree. On April 5, 2002, claimant was sentenced to an indeterminate term of 3 to 6 years of incarceration. According to the claim, at the time of the April 5, 2002 sentencing, it was *331 determined that claimant had failed to complete his administratively imposed period of PRS under the 1999 sentence and therefore was deemed to owe three months on his 1999 sentence and 25 months on the PRS term.
Claimant was conditionally released on the April 5, 2002 sentence on or about September 29, 2005. According to the claim, claimant would have been conditionally released on or about August 14, 2004 had he not been deemed to have owed three months on his 1999 sentence and 25 months on the administratively imposed PRS term, resulting in an unlawful confinement of 411 days.
The claim further alleges that upon claimant’s conditional release on September 29, 2005, claimant’s “time under post-release supervision was scheduled to expire in or about September 2009. This date accounts for local jail-time credits applied to the previous indeterminate sentence and the seven hundred fifty-three days of post-release supervision time still deemed to be owed by the Claimant.”
Claimant was again incarcerated on or about September 12, 2007 as a result of a parole violation. At that time, again according to the claim: “[T]he maximum expiration date of Claimant’s post-release supervision time was estimated to be October 8, 2009.” The claim asserts that
“[a]bsent the DOC’s unlawful assessment of post-release supervision time onto the original sentence and the consequential carry-over of this time in connection with the second sentence, Claimant’s most recent sentence would have expired on or about August 14, 2007. Instead, Claimant was incarcerated until May 28, 2008, and, had it not been for the Supreme Court’s order of Claimant’s release pursuant to a Writ of Habeas Corpus, Claimant would remain unlawfully incarcerated as of the date of this Claim.”
The affidavit of claimant’s attorney states that as of May 28, 2008, claimant had been further unlawfully confined for a period of 265 days, in addition to the 411 days of wrongful confinement suffered prior to his conditional release on September 29, 2005, aggregating to unlawful confinement “for a period of at least 676 days.”
The defendant’s cross motion to dismiss the claim for failure to state a cause of action will be considered first. As previously indicated, defendant does not challenge the salient facts set *332 forth in the claim, but rather argues that the claim fails as a matter of law. Specifically, defendant asserts that claimant cannot prove an essential element of a claim for wrongful confinement.
To establish that he was falsely confined, claimant must prove that “(1) the defendant intended to confine him, (2) the [claimant] was conscious of the confinement, (3) the [claimant] did not consent to the confinement and (4) the confinement was not otherwise privileged” (Broughton v State of New York, 37 NY2d 451, 456 [1975], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975]; Krzyzak v Schaefer, 52 AD3d 979 [3d Dept 2008]).
Defendant concedes that claimant satisfies the first three elements of the claim for wrongful confinement but argues that the confinement was privileged. “Generally, where a facially valid order issued by a court with proper jurisdiction directs confinement, that confinement is privileged . . . and everyone connected with the matter is protected from liability for false imprisonment” (Holmberg v County of Albany, 291 AD2d 610, 612 [3d Dept 2002], lv denied 98 NY2d 604 [2002]).
In the context of typical wrongful confinement claims arising in correctional facilities, privilege arises based upon the quasi-judicial nature of prison disciplinary proceedings “and, unless the employees exceed the scope of their authority or violate the governing statutes and regulations, the State has absolute immunity for those actions” (Holloway v State of New York, 285 AD2d 765, 766 [3d Dept 2001]). The privilege arises from the exercise of “discretionary authority for which the State has absolute immunity” (Holloway, 285 AD2d at 766).
Defendant can point to no valid judicial sentence or order directing claimant’s alleged wrongful confinement (to the extent that it was increased by administrative imposition of the period of PRS), nor can it credibly argue that it was exercising privileged quasi-judicial discretionary authority, and instead argues that the confinement was privileged in that it was imposed “under color of law or regulation, specifically in accordance with regulations” (Gittens v State of New York, 132 Misc 2d 399, 402 [Ct Cl 1986]).
Defendant identifies no express language in any statute or regulation which required or permitted DOCS to impose a period of PRS on claimant, relying solely upon Penal Law § 70.00 (6) and § 70.45 (1), which defendant describes, during the time period in which DOCS administratively imposed the PRS, as *333 “mandating] that each determinate sentence ‘shall include, as a part thereof, a period of post-release supervision.’ ”
Defendant argues that DOCS “was acting directly in accordance with Penal Law §§ 70.00[6] and 70.45[1], therefore, Claimant’s confinement was privileged and the cause of action for unlawful imprisonment is without merit.” The statutory sections cited by defendant give DOCS no authority to impose a period of PRS.
On the contrary, Penal Law § 70.00 (6) expressly states that the court, and not DOCS or any other administrative agency, is required to impose any applicable term of PRS:
“Determinate sentence. Except as provided in subdivision four of this section and subdivisions two and four of section 70.02, when a person is sentenced as a violent felony offender pursuant to section 70.02 or as a second violent felony offender pursuant to section 70.04 or as a second felony offender on a conviction for a violent felony offense pursuant to section 70.06, the court must impose a determinate sentence of imprisonment in accordance with the provisions of such sections and such sentence shall include, as a part thereof, a period of post-release supervision in accordance with section 70.45.” (Emphasis added.)
In further support of its cross motion, defendant provides the legislative Bill Jacket for “Chapter 1 of the Laws of 1998 otherwise known as ‘Jenna’s Law,’ ” which added the PRS provisions to the Penal Law. Nothing in the Bill Jacket indicates a legislative intent that postrelease supervision could be administratively imposed on a convicted person subject to Jenna’s Law if the sentencing court failed to do so. Jenna’s Law, in fact, implemented the provisions of Penal Law § 70.00 (6) which expressly and exclusively reserves the imposition of PRS to the sentencing court. Moreover, the germane question is whether DOCS’s actions were privileged, not, as defendant argues, whether Jenna’s Law contemplates or creates a private right of action.
The United States Court of Appeals, Second Circuit, in a habeas corpus proceeding, citing long-established principles clearly articulated by the United States Supreme Court, considered whether DOCS could administratively impose a term of PRS to a New York State inmate’s sentence pursuant to Penal Law § 70.45. In Earley v Murray (451 F3d 71, 74 [2d Cir 2006]), the court noted that
*334 “[s]eventy years ago, the Supreme Court established that the sentence imposed by the sentencing judge is controlling; it is this sentence that constitutes the court’s judgment and authorizes the custody of a defendant. Hill v. United States ex rel. Wampler, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283 (1936).”
The Earley court further stated that the United States Supreme Court decision in Wampler (cited above) “went on to articulate a broader holding: The judgment of the court establishes a defendant’s sentence, and that sentence may not be increased by an administrator’s amendment” (451 F3d at 75).
Earley (at 75) points out the “unlawful” nature of DOCS’s administrative imposition of postrelease supervision:
“The only cognizable sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect.
“The sentence imposed by the court on Earley was six years in prison. The judgment authorized the state to incarcerate him for six years and no more. Any addition to that sentence not imposed by the judge was unlawful. Yet Earley was subjected to further custody. Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be ‘custody.’ See Jones v. Cunningham, 371 U.S. 236, 240-43, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (holding that parole satisfies the ‘in custody’ requirement of habeas petitions); Peck v. United States, 73 F.3d 1220, 1224 n. 5 (2d Cir.1995) (holding that supervised release satisfies the ‘in custody’ requirement of habeas petitions).”
Next, the Earley court (at 76) rejected the argument that because a period of PRS is mandated by statute it is necessarily part of the sentence by operation of law and that the omission of the mandatory term could be corrected administratively:
“New York law provides the appropriate remedy: If an inmate has received an illegal sentence, the state may move to have the offending sentence vacated and the defendant resentenced by a judge . . .
“Thus, when DOCS discovered the oversight made by Earley’s sentencing judge, the proper course would have been to inform the state of the problem, not to modify the sentence unilaterally. The state
*335 then could have moved to correct the sentence through a judicial proceeding, in the defendant’s presence, before a court of competent jurisdiction.”
Finally, Earley recognizes that “[t]he additional provision for post-release supervision added by DOCS is a nullity” (451 F3d at 76).
The New York State Court of Appeals considered and rejected DOCS’s administrative imposition of PRS to a convicted person’s sentence in Matter of Garner v New York State Dept. of Correctional Servs. (10 NY3d 358, 362 [2008]):
“Here, petitioner demonstrated his right to a writ of prohibition barring DOCS from administratively adding a five-year PRS term to his sentence. First, by imposing that term upon petitioner, DOCS was acting in a judicial capacity. As we explained today in People v Sparber (10 NY3d 457, 470 [2008]), the combined command of CPL 380.20 and 380.40 is that the sentencing judge — and only the sentencing judge — is authorized to pronounce the PRS component of a defendant’s sentence. Second, this act was in excess of DOCS’s jurisdiction; indeed, such action was solely within the province of the sentencing judge. And third, petitioner is clearly entitled to the relief that he seeks because DOCS’s imposition of the PRS term contravenes the CPL’s express mandate that sentencing is a judicial function and, as such, lies beyond DOCS’s limited jurisdiction over inmates and correctional institutions.”
Particularly troublesome in the instant matter is that DOCS usurped the discretion vested in the sentencing court under Penal Law § 70.45 (2) to impose a PRS term upon claimant of betwéen IV2 and 3 years.
In Matter of Quinones v New York State Dept. of Correctional Servs. (46 AD3d 1268, 1269 [3d Dept 2007]), the court, citing the availability of the sentencing court’s discretion in setting the length of PRS for one-time violent felony offenders (as here) stated that
“[s]ince the sentencing court here could have imposed less than a five-year period if it had determined the issue (see Penal Law § 70.45 [2] [f]), we cannot agree with respondent that imposition of a five-year period was mandatory or a purely ministerial act on the part of the Commissioner. Rather, we agree that ‘[t]he only cognizable sentence is the one imposed
*336 by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect’ (People v Duncan, 42 AD3d 470, 471 [2007], quoting Earley v Murray, 451 F3d 71, 75 [2d Cir 2006], cert denied 551 US —, 127 S Ct 3014 [2007] . . . ).”
Further, it appears that Quinones involved a case where, as here, Penal Law § 70.45 (2), as originally enacted in 1998 and unchanged until amended, effective January 13, 2005, applied.
In short, DOCS’s imposition of postrelease supervision on claimant was done not “under color of law or regulation, specifically in accordance with regulations,” but rather was unlawful, beyond its jurisdiction and a legal nullity. Such conduct cannot be said to be privileged.
Defendant further suggests that claimant’s sole remedy for the unlawfully imposed period of PRS is to move to be resentenced by an appropriate court. Defendant relies upon People v Sparber (10 NY3d 457 [2008]) in advancing this argument. In Sparber, the court rejected the argument that DOCS’s “flawed” administrative imposition of PRS required expungement of the statutory requirement of PRS rather than resentencing of the affected convicted persons:
“We conclude that the procedure through which PRS was imposed upon these defendants was flawed as it did not comply with the statutory mandate. To remedy this error, rather than striking PRS from the sentences as urged by defendants, these matters must be remitted to Supreme Court for resentencing and the proper judicial pronouncement of the relevant PRS terms” (10 NY3d at 465).
Sparber discussed the available procedural remedies to correct the failure of sentencing courts to impose PRS, settling on resentencing as the sole remedy for such procedural error. This claim is an action for damages for the tort of wrongful confinement. Claimant is not seeking expungement of the PRS requirement of the Penal Law and does not question that resentencing may be sought. Indeed, on the record before this court it would appear that no one has ever sought, to this day, the remedy defendant now suggests limits claimant, that of being resentenced. Claimant here is seeking compensation for having been confined as a result of an unlawful sentence imposed by an administrative agency purporting to exercise a “judicial function . . . beyond [its] limited jurisdiction over inmates and correctional institutions” (Garner, 10 NY3d at 362).
*337 Sparber, echoing the concerns of the Quinones court, also stated: “These concerns are particularly acute where, as in the case of defendant Rodriguez, the PRS term may vary and must be set at the court’s discretion (see e.g. Penal Law § 70.45 [2] [b]-[f])” (10 NY3d at 470).
And unlike Sparber, in which convicted persons sought to be entirely relieved of any PRS obligation by reason of the sentencing court failing to impose it initially (for which, as the Court of Appeals indicated, the remedy is for the matter to be returned to the sentencing court for pronouncement of the correct sentence), this court faces whether a subsequent resentence acts, nunc pro tunc, to cure already endured confinement that was imposed without authority or privilege.
To that point, it has recently been held that the subsequent resentencing of a convicted person subject to PRS under Penal Law § 70.45, who had not been judicially sentenced to PRS, cannot cure an illegally imposed period of PRS by DOCS.
In Matter of State of New York v Randy M. (57 AD3d 1157 [3d Dept 2008]), Randy M. was convicted in May 1999 of sexual abuse in the first degree and endangering the welfare of a child. The court imposed concurrent sentences of five years and one year in prison, respectively, but did not impose the mandatory period of five years of postrelease supervision required by Penal Law § 70.45. DOCS unilaterally imposed PRS on Randy M. upon his release from prison on March 20, 2003. In August 2007, Randy M. was reincarcerated for violating the conditions of his supervision.
In July 2008, DOCS, pursuant to Mental Hygiene Law § 10.05 (b), provided the Office of Mental Health and the Attorney General with notice that Randy M. may be a detained sex offender who was nearing his anticipated release date. The Attorney General obtained a securing order from Erie County Supreme Court to prevent Randy M.’s release from DOCS’s custody. That same day, Kings County Supreme Court resentenced Randy M. to his original sentence plus five years of postrelease supervision.
The Attorney General then commenced a sex offender civil management petition and obtained an ex parte order authorizing DOCS to retain Randy M. pending a Mental Hygiene Law probable cause hearing. Randy M. then sought a writ of habeas corpus directing his immediate release from custody.
Supreme Court partially granted Randy M.’s application, finding that DOCS could not retain Randy M. in its custody on the *338 basis of the alleged violation of postrelease supervision. But instead of ordering immediate release, the court ordered that Randy M.’s release be stayed pending the probable cause hearing. Randy M. then moved to dismiss the civil management proceeding. The court denied that motion. Randy M. appealed the orders denying his motion to dismiss the civil management proceeding and denying his release in the habeas corpus proceeding.
The Randy M. court held (at 1159):
“Because respondent was not lawfully in the custody of an agency with jurisdiction and was not a detained sex offender, he was entitled to dismissal of the civil management proceeding and should immediately be released. It is now clear that DOCS has no authority to impose any portion of a sentence, including mandatory postrelease supervision, and any administratively-imposed aspect of a sentence is a nullity (see Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d 358, 362 [2008]; Matter of Dreher v Goord, 46 AD3d 1261, 1262 [2007]; see also Matter of Marino v Fischer, 52 AD3d 985, 986 [2008]). As Supreme Court correctly held, and the Attorney General does not contest, respondent could not validly be incarcerated for violating a term of postrelease supervision which was not properly imposed . . . The court’s later resentencing of respondent did not operate retroactively to cure the illegal imposition of postrelease supervision, meaning respondent could not validly be punished for violating the terms of postrelease supervision until after it was imposed by a court.” (Emphasis added.)
Similarly, in People ex rel. Benton v Warden, Adolescent Receiving Detention Ctr. (20 Misc 3d 516, 521 [2008]), the court held that administrative imposition of a term of postrelease supervision where the sentence did not provide for PRS was a legal nullity and violated the convicted person’s due process and statutory rights. The Benton court further found that the convicted person could not be punished for violation of the terms of PRS, even though a judge resentenced him and imposed PRS nunc pro tunc after he was charged with the PRS violation (20 Misc 3d at 521).
Because the imposition of postrelease supervision on claimant by DOCS was a legal nullity, claimant could not be lawfully *339 confined for violating its terms. Any period of claimant’s confinement caused by DOCS’s unlawful and extra-jurisdictional imposition of the postrelease supervision is not privileged and is actionable by claimant.
Moreover, this is not the first time DOCS has acted beyond its jurisdiction by inserting itself in the sentencing process nor is it the first time that it faces liability for wrongful confinement for having done so. In People ex rel. Johnson v Martin (283 App Div 478 [4th Dept 1954], affd 307 NY 713 [1954]), an order granting a writ of habeas corpus was issued by the Wyoming County Court where the inmate (Johnson) claimed that he had been wrongfully confined by the State beyond his lawful sentence. The issue in Johnson is described (at 480):
“It was relator’s contention that under the commitment of the Yates County Court, dated May 27, 1947, his term of imprisonment was for a maximum of five years pursuant to section 288 of the Correction Law and that his term had expired. The position of the State is that, no maximum having been fixed by the sentencing court upon sentence, the relator could be held in custody for the maximum time provided by law as punishment for burglary, third degree, which maximum is ten years. (Penal Law, § 407.)”
The Johnson court found that because Johnson’s maximum term at the time of sentencing was five years, the State had no authority to hold him beyond that period, reminding that
“[t]he passing of sentence upon one convicted of a crime as well as the suspension of sentence is the sole prerogative and duty of the court. The judge must fix the punishment and the limits thereof within the bounds which the Legislature has provided for the crime. The Commissioner of Correction by himself or acting through his agents has no authority to sentence a prisoner nor to fix the limits of his confinement” (283 App Div at 481).
The Johnson decision resulted in a series of successful wrongful confinement lawsuits in the Court of Claims by inmates similarly situated to Johnson (see Waterman v State of New York, 207 Misc 773 [Ct Cl 1955], affd 1 AD2d 235 [4th Dept 1956], affd 2 NY2d 803 [1957]; Brown v State of New York, 10 Misc 2d 833 [Ct Cl 1958], appeal dismissed 6 AD2d 1022 [4th Dept 1958]; Todzia v State of New York, 53 Misc 2d 200 [Ct Cl 1967]).
*340 Of particular note is Williams v State of New York (5 AD2d 936, 937 [3d Dept 1958], lv denied 4 NY2d 678 [1958]), in which the court stated:
“The applicable statutes effective at the time of sentence were open to differing interpretations; but it became settled by People ex rel. Johnson v. Martin (283 App. Div. 478, affd. 307 N. Y. 713) that a commitment for an indefinite term such as the one here considered was deemed to be for a period of five years.”
In Williams, the court not only rejected the suggestion that “differing interpretations” of the law prior to Johnson excused the confinement but also rejected a privilege argument:
“The State in effect argues for a reconsideration of the statutory interpretation made in People ex rel. Johnson v Martin (supra) which we do not regard as open; but its main point is that it is protected from liability for any error resulting from the quasi-judicial nature of the determinations of delinquency and the warrants for detention of the Parole Board (Nastasi v State of New York, 275 App. Div. 524 [1949]; affd. 300 N. Y. 473). But the warrants as they appear in the record before us merely direct that ‘said prisoner be retaken’ and the return of the prisoner to the custody of the warden. When the warden received him he is required to look to the basic judgment and the statute under which it is given to determine how long to hold the prisoner. Thus, the Superintendent of Elmira and the Warden of Auburn properly received the claimant, but the prisoner was required to be discharged when five years of the sentence had been served; and when the Warden of Sing Sing in March, 1954 received the prisoner under parole warrant he was required to examine by what authority he could hold him and for what period. As the court held in habeas corpus, the sentence had fully expired, and judgment for claimant seems justified” (5 AD2d at 937).
These cases demonstrate that even assuming defendant in the instant case claims to have been acting in good faith under a mistaken belief that it was required or permitted to add a PRS term on claimant (notwithstanding an absence of statutory authority to do so and long-ago decided decisions, federal and state, making it clear that sentencing is exclusively a judicial prerogative), it is no defense to a wrongful confinement claim. *341 The fact that the law was “open to differing interpretations” prior to the Johnson decision and that the confinement of the claimants took place prior to the Johnson decision did not excuse the State’s actions or shield it from liability.
The singular role given the judiciary in sentencing persons convicted of a crime recognizes that the government’s awesome power to restrict liberty, to imprison, must be strictly circumscribed and subject to the faithful and correct application of law. Recognizing claimant’s cause of action for wrongful confinement under these facts reaffirms that critically important, necessary limitation of governmental power.
Defendant’s cross motion to dismiss the claim for failure to state a cause of action for wrongful confinement is denied.
Claimant seeks partial summary judgment as to defendant’s liability for wrongful confinement with damages to be determined after trial.
“A motion for summary judgment should be entertained only after the moving party has established, by competent admissible evidence, that it is entitled to judgment as a matter of law. . . If the movant meets this initial burden, the opposing party is required to submit evidence which raises a material issue of fact to preclude an award of summary judgment” (Ware v Baxter Health Care Corp., 25 AD3d 863, 864 [3d Dept 2006]).
Once the moving party has satisfied this obligation, the burden shifts and the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue (Svoboda v Our Lady of Lourdes Mem. Hosp., Inc., 31 AD3d 877 [3d Dept 2006]).
“In opposition to a motion for summary judgment a party must assemble and lay bare affirmative proof to establish that genuine material issues of fact exist. Only the existence of a bona fide issue raised by evidentiary fact rather than one based on conclusory or irrelevant allegations, will be sufficient to defeat a motion for summary judgment where the movant has made out a prima facie basis for the granting of the motion” (Archambault v Martinez, 120 AD2d 632, 632-633 [2d Dept 1986]).
Further, “mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient” to defeat a motion for summary judgment (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
*342 The verified claim alleges that claimant was wrongfully confined as a direct result of the imposition of PRS by defendant. Defendant concedes that PRS was improperly imposed upon claimant but argues that claimant has not shown, as a matter of law, that he was incarcerated for violation of the wrongfully imposed PRS. Defendant’s argument ignores the fact that PRS is itself custody and a form of confinement, albeit substantially less restrictive than incarceration: “Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be ‘custody.’ ” (Earley, 451 F3d at 75.)
The New York State Court of Appeals recognizes that PRS is a limitation on liberty, a form of confinement: “PRS represents a significant punishment component that restricts an individual’s liberty” (Garner, 10 NY3d at 362-363).
Defendant’s assertion that claimant has not proven actual incarceration as a result of the illegally imposed PRS is thus insufficient to defeat claimant’s motion for summary judgment as to defendant’s liability for wrongful confinement (as opposed to contesting the extent of damages arising from the wrongful confinement).
Defendant also opposes the summary judgment motion on the grounds that the confinement was privileged, that resentencing is claimant’s sole remedy, that the Monroe County Supreme Court judgment and order on the habeas corpus petition is not res judicata in this action, that no private cause of action exists for violation of Penal Law § 70.45 and that claimant has not proven the specific number of days that claimant was imprisoned as a direct result of the PRS.
Defendant’s reliance upon privilege as a defense and upon resentencing as the sole remedy were considered and rejected above. Claimant does not allege any cause of action arising under Penal Law § 70.45 nor does claimant allege that the Monroe County Supreme Court judgment and order on the habeas corpus petition is res judicata in this action.
Claimant concedes that a factual issue exists as to the specific number of days that claimant was confined as a direct result of the PRS.
In view of the foregoing, claimant is granted summary judgment as to defendant’s liability for the wrongful confinement of claimant, directly resulting from the unlawful administrative addition of postrelease supervision to claimant’s sentence. *343 Claimant bears the burden at trial of proving the specific number of days that claimant was impermissibly confined, the manner in which he was so confined, whether by incarceration or otherwise, as a direct result of the imposition of postrelease supervision by DOCS, and the damages which he specifically incurred by reason of such confinement.
The claimant’s motion for summary judgment as to liability is granted as described above. Defendant’s cross motion to dismiss the claim is denied.